**IN THE COURT OF APPEALS OF IOWA**

No. 15-1566
Filed November 25, 2015

**IN THE INTEREST OF L.S.,**
 **Minor Child,**

**S.R., Mother,**
  Appellant.

_____

  Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.

  A mother appeals from a juvenile court's order modifying the dispositional order in a child-in-need-of-assistance proceeding. **AFFIRMED.**

  Travis M. Armbrust of Brown, Kinsey, Funkhouser & Lander, P.L.C., Mason City, for appellant.

  Thomas J. Miller, Attorney General, and Bruce Kempkes, Assistant Attorney General, for appellee.

  Cynthia Schuknecht of Noah, Smith & Schuknecht, P.L.C., Charles City, attorney and guardian ad litem for minor child.

  Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

A mother appeals from the juvenile court's order modifying the dispositional order to transfer custody of her child, L.S., to the Iowa Department of Human Services (DHS) for placement outside the home. She contends the State failed to prove a substantial change in circumstances warranting modification occurred following entry of the dispositional order. She further contends that the juvenile court erred in determining that continuation of the child in her home would be contrary to the welfare of the child. We conclude a substantial change in circumstances warranting modification of the prior court order has occurred. We further conclude the State presented sufficient evidence that keeping the child in the mother's home would be contrary to her welfare. Upon our review, we affirm.

## I. Background Facts and Proceedings

L.S., born in August 2013, is the third child born to the mother. DHS has been involved with the family for more than five years. The case before us is the mother's second appeal from a dispositional order removing L.S. from her care and custody.

In May 2014, L.S. was adjudicated a child in need of assistance (CINA) under Iowa Code sections 232.2(6)(c)(2) and 232.2(6)(n) (2013).[1] L.S. stayed in

---

[1] Iowa Code section 232.2(6) provides:

>     6. "Child in need of assistance" means an unmarried child:
>     . . . .
>         c. Who has suffered or is imminently likely to suffer
>     harmful effects as a result of any of the following:
>         . . . .

her mother's care and custody until she was removed in June 2014 following the initial dispositional hearing. The mother appealed and our court affirmed the juvenile court's order removing L.S. *In re L.S.*, No. 14-1080, 2014 WL 5252948, at *4 (Iowa Ct. App. Oct. 15, 2014). We detailed the facts of this case leading up to the June 2014 hearing in our prior opinion. *Id.* at *1–3. There, we discussed the mother's detrimental "on-again, off-again relationship marred by incidents of domestic violence" with her middle daughter's biological father, B.H. *Id.* at 2. We noted her limited progress as it related to her substance abuse issues, her "profound" inability to abstain from alcohol—even while pregnant with L.S., and her "'complete denial' concerning her substance abuse problem." *Id.* at 2–3.

In November 2014, L.S. was returned to the mother's care and custody. The juvenile court held additional dispositional review hearings in December 2014, July 2015, and September 2015. In August 2015, DHS moved to modify the dispositional review order. DHS and the guardian ad litem both recommended L.S. be removed from the mother's custody and placed in the custody of DHS.

Following the September 2015 review hearing, L.S. was again removed from the mother's care and custody and placed in family foster care with her

---

> (2) The failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child.
>
> . . . .
>
> n. Whose parent's or guardian's mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care.

older sisters.[2]  In its order, the juvenile court found the mother continued to have repeated contact with B.H. and his mother, despite a no-contact order between them.[3]  It noted the mother's dishonesty with the court surrounding her communication with B.H., and her requests to her two older children to lie to their foster parents and service providers regarding their contact with B.H. and his mother.  The court expressed concerns regarding the on-going contact between the mother and B.H., and the grave danger he presented to L.S. due to his own history of substance abuse and violence.

The mother's therapist testified she was participating in individual therapy and showing improvement, though she was still in need of continued mental health treatment.  The court acknowledged the mother's participation in family therapy with her two older children, but noted her only motivation to attend was to stay out of jail.  The court found the mother was employed, had stable housing, and had adequate transportation.  She was cooperating with Family Safety, Risk, and Permanency Services for parenting skills and engaging in the Families Together Two Program.

The DHS worker testified about her concerns regarding the mother's lack of supervision of L.S., stating that on one occasion she had gone to visit the

---

[2] The September 2015 hearing was a combined permanency review hearing for the mother's two older children and dispositional review hearing for L.S.  In a separate order following the September 2015 review hearing, the court directed the State to file a second petition for the termination of the mother's parental rights regarding her two older children.  *See In re L.S.*, 2014 WL 5252948, at *7 (reversing the termination of the mother's parental rights to her two older children because the State's initial petitions and the juvenile court's ruling relied on an outdated code section).

[3] The court also ordered the mother to serve fourteen days in jail on a contempt charge for repeated violations of a no-contact order between the mother and B.H.

family and the mother did not know where L.S. was. The mother had told the DHS worker L.S. was inside, when instead, she was several houses away at her maternal aunt's home. On another occasion, the mother had left L.S. alone in the apartment. The DHS worker also testified the mother shared a bond with L.S.

The court noted the mother's parenting skills had not improved. The mother laughed at L.S. when she misbehaved rather than disciplining or correcting her behavior. The mother also brought L.S. to the family therapy sessions with the two older children, despite being told to not to do so, and failed to redirect or soothe her when she screamed for forty-five minutes. The court questioned L.S.'s own emotional stability, citing her screaming and temper tantrums during fits of jealousy when others would talk to the mother. The court also noted the mother permitted the two older girls, ages seven and four, to have social media accounts, and that the seven-year-old communicated with many people through these accounts, some of whom she did not know.

The mother filed an application for interlocutory appeal, which our supreme court granted.

## II. Standard of Review

We review CINA proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "In reviewing the proceedings, we are not bound by the juvenile court's fact findings; however, we do give them weight." *Id.* "Our primary concern is the children's best interests." *Id.* "CINA determinations must be based upon clear and convincing evidence." *Id.* Evidence is clear and

convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

## III.    Analysis

The juvenile court may modify a dispositional order upon good cause if the court finds any of the following circumstances exist:

> (a) The purposes of the order have been accomplished and the child is no longer in need of supervision, care, or treatment.
> (b) The purposes of the order cannot reasonably be accomplished.
> (c) The efforts made to effect the purposes of the order have been unsuccessful and other options to effect the purposes of the order are not available.
> (d) The purposes of the order have been sufficiently accomplished and the continuation of supervision, care, or treatment is unjustified or unwarranted.

Iowa Code § 232.103(4).  If the court finds there is good cause, the court must take a second step in the analysis before it may transfer custody.

A transfer of custody shall not be ordered unless the court finds there is clear and convincing evidence that, "(1) the child cannot be protected from physical abuse without transfer of custody; or (2) the child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available."  Iowa Code § 232.102(5)(a).  Further, the court "must make a determination that continuation of the child in the child's home would be contrary to the welfare of the child, and identify the reasonable efforts that have been made."  Iowa Code § 232.102(5)(b).  Finally, in order to modify custody or placement, there must

also be a material and substantial change of circumstances. *In re R.F.*, 471 N.W.2d 821, 824 (Iowa 1991).

The mother argues the State failed to prove by clear and convincing evidence that L.S. could not be protected from some harm that would justify the CINA adjudication. She contends she has made significant progress as it relates to her substance abuse issues and there is no evidence that she has consumed alcohol or used an illegal substance in years. She also contends there is no evidence that her relationship with B.H. has ever had any negative impact on L.S., and that the repeated violations of the no-contact order are not a reason for removing L.S. from her care. The mother claims no mental health professional has recommended that L.S. be removed from her mother's care due to emotional instability. She further contends she has never placed L.S. in imminent danger, because even when the mother did not know where L.S. was on the occasion when the DHS worker visited, she was still in the care of a family member.

We find the mother's continued contact with B.H., her dishonesty with the court, her lack of supervision of L.S., her unresolved substance abuse and mental health issues, her limited progress in therapy, and her lack of improvement regarding her parenting skills, constitute a material and substantial change of circumstances.

The mother next contends the juvenile court erred in determining that continuation of the child in her home would be contrary to the welfare of the child. *See* Iowa Code § 232.102(5)(b) (2013). She asserts L.S. is safe in her care, their interactions are positive and warm, and they share a close bond. "The

court's determination regarding continuation of the child in the child's home . . . must be made on a case-by-case basis. . . . [P]reserving the safety of the child is the paramount consideration." *Id.* For the reasons stated above, we find the juvenile court was correct and affirm its determination that leaving the child in her home would be contrary to the child's welfare.

Accordingly, we affirm the juvenile court's order modifying the dispositional order to transfer custody of the child to DHS for placement outside the home.

**AFFIRMED.**